UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ANGELIA YOUNG                                                                                    PLAINTIFF

v.                                                                            Civil No. 3:17-cv-00197-GHD-RP

BLAUER MANUFACTURING CO., INC.                                                    DEFENDANT

## MEMORANDUM OPINION

The Court has before it Defendant Blauer Manufacturing Company's motion for summary judgment [63]. For the reasons set forth below, the Court finds the motion should be denied.

### Background

Plaintiff Angelia Young, through her employment with EMI Staffing, Inc.[1], a staffing company, began working at Defendant Blauer in August 2016.[2] She alleges that in September and October of 2016, a coworker named Perry[3] sexually harassed her by making vulgar sexual remarks to her and by forcibly touching breasts and vagina.

Young reported the harassment to her supervisors at Blauer. She first met with human resources manager Carrie Martin and supervisor, O'Dell Miller. She later met with Martin, Miller, and Blauer vice president Elvest Cook. In both of these meetings, Young reported that Perry made sexually harassing statements to her and physically grabbed her. It is disputed whether, during these meetings, Young told her superiors that she did not know Perry outside of work and that other employees witnessed Perry harassing her.

---

[1] Young also sued EMI but dismissed them as a defendant on June 13, 2018.

[2] Blauer disputes that it actually employed Young but does not address that point in its motion.

[3] The coworker is referred to as "Jacob" in the complaint. The parties agree that "Jacob" and "Perry" are the same individual.

1

Cook and Martin interviewed Perry and other co-workers in the factory. Perry admitted during these interviews that he had made sexual comments toward Young but contended that they were consensual. He denied ever touching Young. Perry also informed Cook and Martin that he had previously given Young a ride home after work one day and that she had given him her phone number. He stated that he and Young had previously exchanged text messages. He also provided screenshot of a text exchange between him and Young where Perry asked Young for pictures while she was getting dressed for work. Young responded by asking for pictures from Perry.

After conducting these interviews, Cook claims that he believed Young misled him about the nature of her and Perry's relationship. Blauer alleges that Young affirmatively told management that she did not have any sort of relationship with Perry and did not know him outside of work.[4] Blauer also contends that Young told the managers that several other co-workers had witnessed the harassment, although Young stated that she never said anyone witnessed the touching. Cook ultimately decided to terminate her from Blauer.

Young filed a charge of discrimination against Blauer, claiming that Blauer terminated her in retaliation for reporting Perry's sexual harassment. Young received a notice of right to sue and filed this action, asserting a violation of Title VII.[5] Blauer moved for summary judgment, Young responded, and the matter is now ripe for review.

---

[4] In explaining the ride home and messages, Young alleges that Perry once gave her a ride home after work and during that ride informed her that he had previously been imprisoned for murder. She alleges she gave him her phone number out of fear. She further claims that she did not recognize Perry's number when he messaged her asking for pictures and that she assumed it was her boyfriend.

[5] Young also cites 42 U.S.C. § 1981 as a basis for her retaliation claim. Section 1981 does not, however, provide a cause of action for sex discrimination; it prohibits discrimination only on the basis of race and citizenship status. 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right . . . as white citizens . . . ."). Therefore, the Court will consider her cause of action to be made under Title VII alone.

## Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(a)). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* "An issue of fact is material only if 'its resolution could affect the outcome of the action'." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002)).

The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 (internal quotation marks omitted.); *Littlefield v. Forney Indep. Sch Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)). "[T]he nonmoving party 'cannot defeat summary

judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

### Analysis

"The *McDonnell Douglas* burden-shifting framework applies to Title VII claims brought under a pretext theory." *Giddens v. Cmty. Educ. Centers, Inc.*, 540 F. App'x 381, 389 (5th Cir. 2013) (citing *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005)). The employee must first "produce evidence of a prima facie case of retaliation." *LeMaire v. State of Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007). Then, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754–55 (5th Cir. 2005) (internal quotations omitted). If the employer states such a reason, "'any presumption of retaliation drops from the case' and the burden shifts back to the employee to show that the 'stated reason is actually a pretext for retaliation.'" *Id.* at 755 (quoting *Septimus*, 399 F.3d at 610-11).

Blauer first argues that Young cannot establish a prima facie case of retaliation. To establish a prima facie case of retaliation Young must show that: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *LeMaire* 480 F.3d at 388. It is clear that Young engaged in a protected activity by reporting the sexual harassment and that she suffered an adverse employment action when she was terminated. Blauer argues that Young cannot show a casual connection between her reporting and firing because she was terminated not for making the report, but for lying to Cook.

"The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but for'

4

her protected conduct." *Septimus,* 399 F.3d at 608. Blauer's stated reason for terminating Young was that she misled them during the investigation that arose out of her reporting. The causal link could be no more apparent. Young has presented evidence of a prima facie claim of retaliation.

Blauer next argues that it has established a legitimate, non-retaliatory reason for Young's termination: that she made misrepresentations to Blauer management during the investigation about the nature of her relationship with Perry. Blauer "need only articulate a lawful reason, regardless of what its persuasiveness may or may not be." *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 958 (5th Cir. 1993). Blauer's reason, if true, is a legitimate reason to terminate an employee.

Blauer next argues that Young cannot show that Blauer's legitimate, nondiscriminatory reason for firing her is actually a pretext for retaliation. "A plaintiff may establish pretext 'by showing that the employer's proffered explanation is false or unworthy of credence.'" *Martin v. UT Sw. Med. Ctr.,* No. CIV.A.3:07CV1663-O, 2009 WL 77871, at *11 (N.D. Tex. Jan. 12, 2009) (quoting *Laxton v. Gap Inc.,* 333 F.3d 572, 578 (5th Cir. 2003)). "[T]he plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002). "Evidence demonstrating the falsity of the defendant's explanation, taken together with the prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Id.* (citing *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 147–48, 120 S. Ct. 2097, 2108–09, 147 L. Ed. 2d 105 (2000)).

There is sufficient evidence to create a factual dispute about whether Cook's reasons for firing Young were false. Cook stated that after he interviewed Perry, he found that Young was no longer credible and that he believed she had misled him by telling him that she did not associate

with Perry outside of work. Pl.'s Memo. in Opp., Ex. 10, Dep. of Elvest Cook at 18 [67-10]. Cook asserted that he believed Young lied to him based on several things Perry told him: that Perry once gave Young a ride home, that Perry and Young engaged in mutual conversations that were sexual in nature; that Perry and Young previously exchanged text messages; and the screenshot of a conversation between Perry and Young about exchanging photographs of each other. *Id.* at 20–22. Cook also stated that he believed Young lied about potential witnesses to the harassment. *Id.* at 18.

However, there is conflicting evidence about whether Young lied to anyone at Blauer. Young testified that in her initial meeting with Martin and Miller, she informed them about Perry giving her a ride home. Pl.'s Memo. in Opp., Ex. 2, Dep. of Angelia Young at 98 [67-2]. She also testified that at the second meeting, in which she met with Cook, she was never asked about her relationship with Perry. *Id.* at 101–103. Cook, however, claims he asked Young about the relationship, and that she denied knowing Perry outside of work. Cook Dep. at 28, 61. Thus, there is at least a factual dispute about whether Young stated she had no prior relationship with Perry.

Further, after speaking with Perry, Cook did not investigate further into Young and Perry's alleged relationship. *Id.* at 51–52. Cook stated that he had developed that idea that Young and Perry had previously been in a relationship, that something happened, and that she had falsely accused him of sexual harassment. *Id.* at 32, 67. Cook, however, stated in his deposition that he was without any specific evidence that Young was lying about either the harassing language or the forced touching. *Id.* at 32, 63, 67.

As to Cook's assertion that Young lied about co-workers witnessing the harassment, a report written by Carrie Martin after the events occurred stated that Young told them that co-workers saw what had happened to her. Pl.'s Resp. in Opp., Ex. 9, Second Written Report at 1 [67-9]. However, Cook stated in his deposition that he could not remember Young ever telling him

that co-workers witnessed Perry assaulting her. Cook Dep. at 16–17. Young also denied in her deposition that anyone witnessed the Perry assaulting her. Young Dep. at 85–86. Further, Martin testified that other employees did tell her the employees often had sexual conversations with each other, even though they could not remember specifically if Perry had made any such statements to Young. Pl.'s Resp. in Opp., Ex. 11, Dep. of Carrie Martin at 74–75 [67-11]. There is thus a factual dispute as to whether Young lied about co-workers witnessing Perry harass her.

Finally, Martin, who was involved in the investigation, gave several different reasons as to why Young was fired. In her deposition, Martin first stated that "we wanted to end her assignment, because she had falsely accused [Perry]." *Id.* at 41. But she later stated that one reason for firing Young was because Martin believed Young herself was sexually harassing Perry. *Id.* at 51. Martin then went on to state that Perry, whom she thought was also engaging in the same conduct, was allowed to keep his job. *Id.* While "proof of an employer's reason's becoming more detailed . . . is insufficient to create a jury question," inconsistent reasons can create fact issues of pretext. *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 620 F. App'x 215, 220 (5th Cir. 2015) (citing *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir.2002); *Hamilton v. AVPM Corp.*, 593 F. App'x. 314, 322 (5th Cir.2014) (per curiam)).

Blauer argues that Martin's statements are irrelevant because she did not make the decision to fire Young. But Martin testified that she and Cook discussed what action he would take, and that she gave him her opinion on whether Young should be fired. Martin Dep. at 52–54. "[W]hen the person conducting the final review serves as the 'cat's paw' of those who were acting from retaliatory motives, the causal link between the protected activity and adverse employment action remains intact." *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002). "The degree to which [the final

7

decisionmaker's] decisions were based on his own independent investigation is a question of fact . . . ." *Long v. Eastfield Coll.*, 88 F.3d 300, 307 (5th Cir. 1996).

Here, not only is there a factual dispute about whether Young actually lied to or misled Blauer, but Blauer has been inconsistent about whether it fired her for lying about her relationship with Perry or whether it fired her because it believed she was lying about the harassment itself. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148, 120 S. Ct. 2097. Young has provided evidence such that a reasonable jury could find Blauer's stated reasons for firing her false. Accordingly, there exists a genuine issue of material fact as to whether Blauer terminated Young in retaliation for her report of sexual harassment.

## Conclusion

The Court finds that there is a genuine issue of material fact as to whether Blauer intentionally discriminated against Young on the basis of her sex by firing her for reporting sexual harassment. For that reason, Blauer's motion for summary judgment is denied.

An order in accordance with this opinion shall issue.

This the 20th day of November, 2018.

SENIOR U.S. DISTRICT JUDGE